UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIA ELENA ANDRADE GUTIERREZ and JOAN
MIGUEL DIAZ RODRIGUEZ,

                              Plaintiffs,

       v.

EDWARD REILLY and BELL CONTAINER
CORPORATION,

                              Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

24-CV-3953
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

This diversity action[1] arises out of a rear-end motor vehicle accident that occurred on January 10, 2023 ("the Accident"). Dkt. No. 20 ¶ 40. Plaintiffs Maria Elena Andrade Gutierrez and Joan Miguel Diaz Rodriguez (collectively, "Plaintiffs") commenced this action against Defendants Edward Reilly and Bell Container Corporation ("Bell Container") (collectively, "Defendants") alleging that Reilly negligently caused Defendants' vehicle to strike Gutierrez's vehicle. *Id.* ¶¶ 21-22, 25-28. Rodriguez was a passenger in Gutierrez's vehicle at the time of the Accident. *Id.* ¶¶ 38, 40. Plaintiffs seek to recover damages for their alleged serious injuries resulting from the Accident, pursuant to New York's "No-Fault" Insurance Law, N.Y. Ins. Law § 5102(d). Dkt. No. 20 ¶¶ 29-30, 44-45. Defendants also raise a counterclaim against Gutierrez, arguing that "if and in the event [Plaintiffs] sustained the injuries or damages complained of (which injuries/damages are specifically denied by [Defendants], such injuries and damages were caused

---

[1] The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Plaintiffs are both residents of New York. Dkt. No. 20 ¶¶ 1-2. Reilly is a resident of New Jersey and Defendant Bell Container Corporation is a corporation organized under the laws of New Jersey. *Id.* ¶¶ 3-4. The amount in controversy exceeds $75,000. *See id.* at 10.

in whole or in part by the reason of the wrongful conduct, negligence, recklessness and/or carelessness" of Gutierrez. Dkt. No. 21 at 10.[2]

The parties consented to the undersigned's jurisdiction in this matter. *See* Dkt. Nos. 15, 16.[3] Before the Court is Plaintiffs' motion for partial summary judgment on the issue of liability, brought pursuant to Federal Rule of Civil Procedure 56.[4] *See* Dkt. No. 46. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion for partial summary judgment on liability.

I.  **Background**

The following facts, taken from the parties' respective Local Civil Rule 56.1 statements of fact and relevant portions of the record, are undisputed unless otherwise noted.[5]

---

[2] Page citations are to the ECF-stamped pages unless otherwise noted.

[3] Gutierrez, in her capacity as a counter-defendant, also noted her consent to the undersigned's jurisdiction. *See* Text Order, dated Jan. 10, 2025.

[4] The parties filed a total of four summary judgment motions: Plaintiffs' motion for partial summary judgment on the issue of liability (Dkt. No. 46); Defendants' separate motions for summary judgment against each Plaintiff (Dkt. Nos. 47, 49); and Gutierrez's motion for summary judgment on Defendants' counterclaim (Dkt. No. 51). The Court addresses only Plaintiff's motion for partial summary judgment in this Memorandum and Order. The Court will consider and address the three remaining summary judgment motions separately.

[5] "[A] standalone citation to a party's Local Rule 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, No. 12-CV-6383 (PKC) (SIL), 2025 WL 948111, at *1 n.2 (E.D.N.Y. Mar. 28, 2025). "Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein." *Id.* "Where relevant, the Court may cite directly to an underlying document," but "where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such facts undisputed." *Id.* (citations omitted); Loc. Civ. R. 56.1(c)-(d); *see also Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." (quoting *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-CV-500E(M), 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd*, 49 F. App'x 356 (2d Cir. 2002))); *Su v. Top Notch Home Designs Corp.*, No. 20-CV-5087 (GRB) (JMW), 2023 WL 8878553, at *3 (E.D.N.Y. Dec. 22, 2023) (same).

The Accident occurred on the westbound side of I-278 Brooklyn-Queens Expressway ("BQE") at or near Queens Boulevard in Queens, New York. *See* Dkt. No. 46-1 ¶ 8; Dkt. No. 58 at 3, 8. Traffic was described as "light" and "medium," with vehicles purportedly driving at consistent speeds. Dkt. No. 58 at 7-8.

At the time of the Accident, a tractor trailer owned by Bell Container and operated by Bell Container employee Reilly came into contact with the rear bumper of a vehicle operated by Gutierrez. *See* Dkt. No. 46-1 ¶¶ 9, 12, 15; Dkt. No. 58 at 3-4, 7, 8. Reilly operated the vehicle as part of his employment with Bell Container on the day of the Accident. Dkt. No. 58 at 7.

Plaintiffs allege that Gutierrez's vehicle was traveling at fifty-five miles per hour in the middle lane on the BQE for less than ten minutes when Defendants' vehicle came into contact with the rear bumper of Gutierrez's vehicle.[6] Dkt. No. 46-1 ¶¶ 11-14; Dkt. No. 46-11 at 91, 93; Dkt. No. 58 at 6. Gutierrez testified at her deposition that she was in the middle lane at the time of the Accident and had not changed lanes the entire time she was on the BQE. Dkt. No. 46-11 at 91. Gutierrez testified that she did *not* "hit [her] brakes" to slow her vehicle down or stop at any point prior to the Accident. Dkt. No. 46-1 ¶ 11; Dkt. No. 46-11 at 98, 151. Plaintiffs contend that even though Reilly engaged the brakes in his vehicle, his vehicle still "skidded 80 feet and struck [Gutierrez's] vehicle bumper." Dkt. No. 46-1 ¶ 15. Rodriguez, the passenger in Gutierrez's vehicle, testified that his eyes were closed at the time of the Accident and that he did not see Defendants' vehicle until after it came into contact with Gutierrez's vehicle. Dkt. No. 58 at 7; Dkt. No. 57-4 at 55, 59.

In contrast to Plaintiffs' version of events, Defendants allege that when Reilly first saw Gutierrez's vehicle (only five to ten seconds before the Accident occurred), Gutierrez's vehicle

---

[6] The BQE is composed of three lanes. Dkt. No. 46-1 ¶ 12.

3

was travelling at approximately twenty-five to thirty miles per hour. Dkt. No. 58 at 8; Dkt. No. 57-3 at 28-29. Reilly testified that he was traveling forty-five miles per hour prior to the Accident. Dkt. No. 57-3 at 27, 28-29. Unlike Plaintiffs' version of events, Defendants contend that Gutierrez's "brakes *were* tapping (brake lights going on and off)," and that Gutierrez was "increasingly slowing" her speed. Dkt. No. 58 at 8 (emphasis added); Dkt. No. 57-3 at 29. According to Defendants, Reilly gradually "applied his brakes as soon as he noticed [that Gutierrez's vehicle's] brake lights were going on and off." Dkt. No. 58 at 8; Dkt. No. 57-3 at 30-31. Reilly noted that when Gutierrez's vehicle "slowed down, he slowed down as well[.] [Plaintiffs] then went slower and slower, veered to the right lane, then came back over to the middle lane and stopped the vehicle in the middle lane." Dkt. No. 58 at 8; *see also* Dkt. No. 57-3 at 31 ("I seen [*sic*] [Gutierrez's] car slowing down. As I was approaching, I slowed down. [Gutierrez] was getting slower and slower. So I maintained maybe the same speed she was going at that time. However, then I seen [*sic*] the brakes go back on. She veered into the right lane, and then she came back over to the middle lane and just stopped the car."). According to Defendants, Gutierrez's vehicle did not use its turn signal when changing lanes. Dkt. No. 58 at 8; Dkt. No. 57-3 at 31. Prior to coming to a complete stop, Gutierrez's vehicle "braked suddenly" as soon as Gutierrez's vehicle veered back into the center lane. Dkt. No. 58 at 8; Dkt. No. 57-3 at 34. The impact between the vehicles then occurred. Dkt. No. 58 at 8. When the impact occurred, Gutierrez's vehicle was "almost in the center lane" and partially in the right lane. *Id.*; Dkt. No. 57-3 at 32-33. Photos of damage from the collision and testimony show that the damage to Gutierrez's vehicle was primarily on the rear-left/driver's side. *See* Dkt. No. 57-1 at 157; Dkt. No. 57-2 at 95-98.

4

Plaintiffs allege that they both suffered "serious injuries as defined under No-Fault Insurance Law § 5104(d) and § 5102(d)" as a result of the Accident. Dkt. No. 46-1 ¶ 10.

## II.   Procedural History

On November 16, 2023, Plaintiffs filed their Complaint against Reilly and Ryder Truck Rental, Inc. ("Ryder Truck") in the Supreme Court of the State of New York, Queens County. *See* Dkt. No. 1-1. On January 2, 2024 and January 19, 2024, Ryder Truck and Reilly, respectively, filed their Answers, asserting several affirmative defenses and a counterclaim against Gutierrez. Dkt. Nos. 1-2, 1-3. On May 31, 2024, Reilly and Ryder Truck removed the action to this Court on diversity jurisdiction grounds. Dkt. No. 1.

On July 23, 2024, the parties filed a stipulation of dismissal as to Ryder Truck. Dkt. No. 13. Plaintiffs filed an Amended Complaint against Reilly and Bell Container on August 9, 2024. Dkt. No. 20. On August 22, 2024, Defendants filed their Answer to the Amended Complaint, asserting numerous affirmative defenses and a counterclaim against Gutierrez. Dkt. No. 21. Discovery closed on April 5, 2025. Text Order, dated Apr. 5, 2025.

On June 9, 2025, Plaintiffs moved for summary judgment on the issue of liability.[7] Dkt. No. 46. Defendants filed their opposition to Plaintiffs' motion on June 27, 2025. Dkt. No. 56. Plaintiffs filed their reply on July 7, 2025. Dkt. No. 61.

---

[7] Although not relevant for purposes of deciding the instant motion, the Court notes, for completeness, that on June 13, 2025, Defendants filed their separate motions for summary judgment against each of the Plaintiffs, and Gutierrez moved for summary judgment on Defendants' counterclaim against her. Dkt. Nos. 47 (Defendants' motion as to Rodriguez's claim), 49 (Defendants' motion as to Guitierrez's claim), 51 (Gutierrez's motion). Gutierrez and Rodriguez opposed Defendants' motions on July 9, 2025 and July 10, 2025, respectively. Dkt. Nos. 62-68. Rodriguez opposed Gutierrez's motion on July 10, 2025. Dkt. Nos. 69-71. Defendants filed their replies as to their motions on July 18, 2025. Dkt. Nos. 72-75. Those motions will be addressed in separate orders.

### III.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). Genuine disputes as to any material fact do not exist where:

> (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material).

*Lange v. Dep't of Educ. of N.Y.*, No. 17-CV-3443, 2018 WL 4636986, at *2 (S.D.N.Y. Sep. 26, 2018) (Sullivan, J.) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *see also Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried" (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984))). "In determining whether there is a genuine dispute as to

6

a material fact, we must resolve all ambiguities and draw all inferences against the moving party." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (citation omitted).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (citation omitted). Neither "[c]onclusory allegations, conjecture, [nor] speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), nor a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are sufficient to establish a genuine dispute of material fact. "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'" *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980)).

**IV.   Discussion**

"Because this is a negligence action that was removed to federal court on diversity grounds," this Court must "apply New York's substantive law." *Kissoon v. Wal-Mart Real Est. Bus. Tr.*, No. 24-2822, 2025 WL 3119444, at *1 (2d Cir. Nov. 7, 2025) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "To establish a *prima facie* case of negligence under New York law, the plaintiff must demonstrate '(i) the existence of a duty of care owed by the defendant to the plaintiff, (ii) breach of that duty, and (iii) damages or injury proximately caused by the defendant's breach.'" *Id.* (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998)); *see also Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023) (same). "The symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability." *Vogel v. W. Mountain Corp.*,

7

470 N.Y.S.2d 475, 476 (N.Y. App. Div. 1983) ("[W]hether a duty exists presents a question of law to be determined by the court based upon the facts and circumstances of the case."). A "defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Dooley*, 83 F.4th at 162 (citing *Mazella v. Beals*, 57 N.E.3d 1083, 1090 (N.Y. 2016)).

"[A] violation of a [s]tate [or federal] statute that imposes a specific duty constitutes negligence *per se*." *Mahoney v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-4127 (MKB), 2025 WL 2772949, at *5 (E.D.N.Y. Sep. 26, 2025) (quoting *Espinoza v. Foundry Workers LLC*, 792 F. Supp. 3d 344, 352 (E.D.N.Y. 2025)). In New York, the Vehicle and Traffic Law ("VTL") defines the duties of motorists, and "[a] violation of the [VTL] constitutes negligence as a matter of law." *Dooley*, 83 F.4th at 163 (quoting *Desio v. Cerebral Palsy Transp., Inc.*, 994 N.Y.S.2d 681, 682 (N.Y. App. Div. 2014)). New York law "impose[s] a duty upon drivers to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." *Vaselli v. United States*, No. 12-CV-6221, 2014 WL 4961421, at *5 (E.D.N.Y. Oct. 3, 2014) (Bianco, J.) (quoting *Goldstein v. United States*, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998)). Such longstanding duty "requires drivers to maintain a reasonably safe rate of speed, have the automobile under reasonable control, to keep a proper lookout under the circumstances then existing to see and be aware of what was in their view, and to use reasonable care under the circumstances to avoid an accident." *Id.* (quoting *Goldstein*, 9 F. Supp. 2d at 186).

Where a defendant violates a statute that "defines the degree of care to be used under certain circumstances," such a violation "constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury." *Id.* (quoting *Mauro*

8

*v. Costco Wholesale Corp.*, No. 09-CV-1391 (VVP), 2013 WL 3816731, at *4 (E.D.N.Y. July 22, 2013)). VTL § 1128(a) states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.Y. Veh. & Traf. Law § 1128(a). VTL § 1163(a), in turn, prohibits a driver from "mov[ing] [a vehicle] right or left upon a roadway unless and until such movement can be made with reasonable safety." N.Y. Veh. & Traf. Law § 1163(a). Together, these provisions impose a duty upon drivers to operate their vehicles "within a designated lane, to signal prior to changing lanes or turning, and to change lanes or turn only when it is safe to do so . . . and to see that which [he] should have seen by the proper use of [his] senses." *Guerrero v. Loiacono*, 688 F. Supp. 3d 50, 59-60 (E.D.N.Y. 2023) (citation omitted). Establishing that a defendant violated one of the "rules of conduct" established by the VTL is sufficient to establish a presumption that he was behaving negligently, and the burden of proof shifts away from the plaintiff. *See Vaselli*, 2014 WL 4961421, at *5 ("a violation of the VTL constitutes negligence *per se*" (quoting *Lee v. Charles*, 986 F. Supp. 2d 277, 279 (S.D.N.Y. 2013))) (collecting cases).

Furthermore, "New York courts have long recognized that '[a] rear[-]end collision with a stopped or stopping vehicle creates a *prima facie* case of liability with respect to the operator of the rearmost vehicle.'" *Turansky-Frances v. United States*, No. 17-CV-2548 (JS) (ARL), 2022 WL 991979, at *8 (E.D.N.Y. Mar. 31, 2022) (quoting *Comba v. United States*, 535 F. Supp. 3d 97, 105 (E.D.N.Y. 2021)); *see also* N.Y. Veh. & Traf. Law § 1129(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."). The defendant must provide "a non-negligent explanation of the collision in order to overcome the

9

inference of negligence and defeat the motion for summary judgment" to escape liability in such a case. *Turansky-Frances*, 2022 WL 991979, at *8 (quoting *Luizzi v. Pro Transp. Inc.*, No. 02-CV-5388 (CLP), 2009 WL 252076, at *4 (E.D.N.Y. Feb. 2, 2009)). "Accepted examples of 'non-negligent explanations' include mechanical failure of the rearmost vehicle, a sudden stop of the lead vehicle, and unavoidable skidding on wet pavement." *Id.* (citing *Comba*, 535 F. Supp. 3d at 106); *see also Lhotan v. Cahill*, No. 22-CV-7681 (VB), 2025 WL 2051625, at *7 (S.D.N.Y. July 22, 2025) ("a sudden stop of the vehicle ahead" is a non-negligent explanation that may rebut the presumption of negligence). But "[c]onclusory allegations of a sudden and unexpected stop are insufficient" to do so. *Moskovitz v. Dean*, No. 99-CV-6085 (TPG), 2001 WL 1442674, at *1 (S.D.N.Y. Nov. 15, 2001); *see also Randhawa v. Otero*, No. 22-CV-10479 (KMK), 2024 WL 4150335, at *6 (S.D.N.Y. Sep. 11, 2024) (collecting cases regarding foreseeable and unforeseeable stops in rear-end collision cases). "What matters . . . is that Defendants put forward some evidence of a non-negligent explanation for the collision, which suffices to defeat summary judgment." *Randhawa*, 2024 WL 4150335, at *6; *cf. Espinoza*, 792 F. Supp. 3d at 352 (granting summary judgment where the defendants "fail[ed] to point to any evidence in the summary judgment record . . . to suggest that Plaintiff abruptly changed speeds, thereby causing an accident").

Here, there is no dispute that the parties were involved in a rear-end motor vehicle collision. *See* Dkt. No. 46-1 at 2-3; Dkt. No. 58 at 3-4. But there is a genuine dispute of fact as to Defendants' proffered non-negligent explanation for the accident. Defendants assert that Reilly's non-negligent explanation for the accident is Gutierrez's unsafe and erratic driving and abrupt stop of her vehicle. *See* Dkt. No. 56 at 13, 17-20; Dkt. No. 58 at 8-9. Specifically, Defendants contend that the vehicle operated by Gutierrez was traveling at approximately twenty-five to thirty miles per hour when Reilly first saw the vehicle, and that Gutierrez's brake lights were going on and off

10

as she "increasingly slow[ed]" her speed. *See* Dkt. No. 58 at 8; Dkt. No. 57-3 at 28-29. Reilly testified that he began gradually applying his brakes when he noticed Gutierrez's brake lights going on and off. Dkt. No. 58 at 8; Dkt. No. 57-3 at 30-31. Reilly testified that Gutierrez's vehicle continued slowing down, veered to the right lane, and "then she came back over to the middle lane and just stopped the car," without using any turn signals. Dkt. No. 58 at 8; Dkt. No. 57-3 at 31. "Prior to coming to a complete stop, [Gutierrez] braked suddenly, as soon as she veered into the center lane." Dkt. No. 58 at 8; Dkt. No. 57-3 at 34. The collision occurred "almost in the center lane." Dkt. No. 58 at 8; Dkt. No. 57-3 at 32-33.

Indeed, photos of damage from the collision show that the impact occurred on the rear-left side of Gutierrez's vehicle. Dkt. No. 57-2 at 95-98; *see also* Dkt. No. 57-1 at 157 (Gutierrez's testimony that her vehicle "was more severely damaged on the driver's side"). In addition, the parties agree that Defendants' vehicle skidded after Reilly applied the brakes, but dispute the distance of the skidding. *See* Dkt. No. 46-1 ¶ 15; Dkt. No. 58 at 4, 9. The parties also dispute whether Gutierrez even pressed the vehicle's brakes or changed lanes prior to the collision. *See* Dkt. No. 46-2 at 5; Dkt. No. 56 at 13.

At bottom, a genuine issue of fact exists as to liability. Defendants have sufficiently set forth a non-negligent reason for the collision: that Gutierrez unexpectedly turned back into the middle lane, without using a turn signal, and suddenly stopped without sufficient time for Reilly to come to a complete stop before colliding with Gutierrez's vehicle. *See, e.g.*, *Randhawa*, 2024 WL 4150335, at *6 ("Unexpected or *un*foreseeable slowdowns may be entirely 'needless,' result from unobservable 'road conditions,' or may follow from unanticipated events like a deer jumping into the road." (internal citations omitted)); *Guerrero*, 688 F. Supp. 3d at 60 ("Sharp conflicts of evidence regarding the circumstances of a vehicle collision present questions of fact and credibility

11

that properly belong to the jury." (quoting *Son v. Lockwood*, No. 07-CV-4189 (JMA), 2008 WL 5111287, at *5 (E.D.N.Y. Nov. 26, 2008))); *Munoz v. 640, LLC*, No. 19-CV-5751 (BMC), 2021 WL 1176168, at *2 (E.D.N.Y. Mar. 29, 2021) (denying summary judgment where parties' diverging stories created a material fact dispute about whether the defendant "maintained a safe distance behind plaintiffs' vehicle and did not expect a sudden stop"); *Torres v. Mamadou*, No. 19-CV-6973 (SLC), 2021 WL 3682906, at *5 (S.D.N.Y. Aug 19, 2021) (denying summary judgment where there was a dispute about whether the plaintiff "suddenly stopped" and whether the defendant "might not have been expected to anticipate the stop"). "What matters . . . is that Defendants put forward some evidence of a non-negligent explanation for the collision, which suffices to defeat summary judgment." *Randhawa*, 2024 WL 4150335, at *6. Defendants did so here.

Accordingly, the Court denies Plaintiffs' motion for partial summary judgment.[8]

---

[8] In opposition to Plaintiffs' motion, Defendants also attempt to invoke the emergency doctrine as a defense to liability. *See* Dkt. No. 56 at 18. Defendants' non-negligent explanation and the factual disputes identified by the Court preclude summary judgment on the issue of liability. Thus, the Court need not further consider whether "(1) [Reilly] 'was faced with a sudden and unexpected situation which left him little to no time for deliberation; and (2) . . . acted as a reasonable and prudent person would once he was in that situation.'" *Dones v. United States*, No. 15-CV-5332 (ARR) (RML), 2019 WL 332175, at *3 (E.D.N.Y. Jan. 25, 2019) (citation omitted). Similarly, the Court need not address Defendants' argument that Gutierrez was comparatively negligent given its denial of Plaintiffs' motion. *See Guerrero*, 688 F. Supp. 3d at 64 ("Because this Court has determined that Plaintiff has not demonstrated an absence of genuine disputes of material fact regarding Defendants' negligence, the Court need not further address the parties' arguments regarding whether Plaintiff was comparatively negligent.").

## V. <u>Conclusion</u>

Plaintiffs have failed to meet their burden of demonstrating the absence of a genuine issue of material fact. Thus, for the foregoing reasons, Plaintiffs' motion for partial summary judgment on liability is denied.

Dated:   Brooklyn, New York           **SO ORDERED.**
         January 14, 2026

                                                      _/s/ Joseph A. Marutollo_
                                                     JOSEPH A. MARUTOLLO
                                                     United States Magistrate Judge